WILLIAM H. FANCHER, Plaintiff, *v.* THE NEW YORK, LAKE ERIE AND WESTERN RAILROAD COMPANY, Defendant.

*Liability of an employer for defective apparatus — when a question of fact — what risks an employee assumes.*

In an action brought by the fireman of an engine to recover damages resulting from injuries sustained through his falling from the engine while shaking the grate, it was proved that the grate was so constructed that it was sometimes lifted from its bed when being shaken so as to allow the bar for shaking it to be thrown so far to one side as to cause it to slip from the fireman's hands; that a leaky faucet had, on the day of the accident, covered the iron plate upon which the fireman stood while shaking the engine with water so as to make it slippery; that the plaintiff did not know of the tendency of the grate to slip from its bed, although he had ridden on the engine before; that he tried to fix the faucet, which had been leaking for several weeks, but of the leaky condition of which he did not learn until just before the accident; that while he was attempting to shake the engine the grate was lifted out of its position, the bar slipped from his hands, and at the same time his feet slipped from under him, and he fell from the engine and was injured.

It was also shown that on previous occasions, when the plaintiff had shaken such a grate as this, he had been supplied with the means of lengthening the shaking bar which facilitated the shaking of the grate.

*Held*, that there was a radical defect in the grate and the shaking apparatus which rendered the plaintiff's hold upon the lever insecure, that he was liable to be precipitated out of the cab in case his hands and feet slipped in the manner stated, that the water from the faucet was an important factor in causing the accident, and that the evidence presented questions of fact which should have been submitted to the jury for it to find whether the defendant had not failed to provide the plaintiff with proper machinery and appliances with which to do the work required of him, and as to whether the accident was not the result of the defendant's negligence in that regard.

Where the absence of safeguards, such as chains across the openings between the cab and the tender, is visible to the plaintiff he must be held to assume the risk attending the use of the engine without them.

MOTION by the plaintiff, William H. Fancher, for a new trial on a case containing exceptions, ordered to be heard at the General Term in the first instance, upon a judgment of nonsuit rendered at the Monroe County Circuit on the 12th day of October, 1892.

*Walter S. Hubbell,* for the plaintiff.

*E. C. Sprague,* for the defendant.

LEWIS, J. :

Plaintiff was, at the time of the accident, and had been for several years prior thereto, in the employ of the defendant as a locomotive fireman. A part of his duties as such was to shake the grate under the fire in the engine. While performing this duty on the 3d day of October, 1889, he sustained injuries caused, as he claimed, by the negligence of the defendant, and he brought this action to recover his damages.

At the close of his evidence he was nonsuited, and his exceptions were directed to be heard in the first instance at the General Term. The defendant had two kinds of engines in use at the time. One was known as the foot-board engine, and the other as the stem-winder engine. Plaintiff had worked upon the former class of engines mainly. The grates in the foot-board engines were arranged to be worked in sections, and were easily moved. Plaintiff's usual run was between Rochester and Elmira.

He was directed, on the morning of the day of the accident, to go over his usual route with a stem-winder engine, known as No. 98, which was the one upon which the accident occurred. He did as directed. The train left Rochester for Elmira about six o'clock in the morning. It is the contention of the plaintiff that the accident was caused by defects in the grate and the machinery of the engine for which the defendant was responsible. Three defects are complained of. The grate was composed of a number of sections, which were so connected that when the grate was shaken it necessarily moved as one member.

There was a shaker bar which, when not in use, lay down upon its side; when used, it was brought up to a perpendicular position, and was worked back and forth, crosswise of the engine. There was an arm or projection on each end of the several sections com-

posing the grate. These rested in sockets and were arranged to be held in position solely by their own weight and that of the coal upon them, there being no cap or other appliance over the ends of the arms or rods to keep them in position when the grate was being shaken.

There was an ash pan under the grate to catch and hold the ashes and cinders passing through the grate from the burning coal. The sections of the grate had upon their sides projections or fingers some six inches in length, which, when the grate was manipulated, worked up and down, passing by each other. There was evidence tending to show that after the fire had continued for a considerable time ashes and cinders were liable to accumulate in such quantities in the ash pan under the grate that the fingers or projections mentioned, when the grate was shaken, would occasionally strike or press upon the cinders and ashes below, and thereby lift or force the arms of the grates out of their sockets. This, the evidence showed, had happened quite often with this grate before the time of the accident.

If the grate remained in its proper position when shaken, the lever or shaker bar, when it was worked back and forth, would remain so nearly in an upright position that the operator could easily retain his hold upon it; but when the grate was lifted out of its sockets it would permit the shaker bar to pass so far over as to be nearly or quite at right angles with the body of the person operating it, so that the hands of the fireman were liable to slip off the end of the lever. The fireman's place to stand when shaking the grate of the stem-winder engine, is in the gangway between the engine and the tender. There is an opening at each end of this gangway of sufficient size to permit the engineer and fireman to pass through it in getting on and off the engine. On engine 98 the place for the fireman to stand when he was engaged in shaking the grate was covered with sheet iron, which had become very smooth. There was a water tank near this standing place mentioned; it had a defective faucet, out of which water ran on the day in question, and spread over the standing place mentioned, making it slippery. The evidence tended to show that this leaky condition of the tank had existed for several weeks immediately prior to the time of the accident.

Great force and power were required to work the grate upon this engine, for the reason that it all moved at one time.   There was evidence showing that there were grates in common use upon other locomotives which could be moved in sections, and which required much less power to shake them than it did to shake the grate of engine 98.

After the train had passed some twenty-three miles below Avon on the day in question, plaintiff attempted to shake the grate.   He was obliged, in order to move it, to use all his strength.   Standing upon the wet floor he pulled the shaker bar toward himself with such force that the grate was lifted out of its sockets, thus permitting the shaker bar to pass over so far towards plaintiff that his hands slipped off of the lever, his feet at the same time slipped from under him, and he fell back out of the cab through one of the openings mentioned upon the ground, and was injured.

The train was moving at the time about thirty miles an hour. Water had been leaking from this faucet a month or more before the time of the accident — for a sufficient length of time to justify the inference of constructive notice of its condition to the defendant. The plaintiff had not discovered, and did not know that it had leaked until just before the time of the accident.   There was evidence showing that the plaintiff had worked upon this same engine on some prior occasions, but he was not aware of the liability of the grate to be lifted out of its position, nor of this leaky faucet.

On the few occasions that he had theretofore shaken such a grate he had been provided with an appliance for lengthening the shaker bar, which facilitated the shaking of the grate.   This was not furnished to him on the day of the accident.   It is apparent that there was a serious and radical defect in the grate and in the shaking apparatus which rendered the fireman's hold · upon the lever, in the contingency mentioned, insecure ; standing, as he was obliged to in operating the shaker bar, opposite the openings in the cab heretofore mentioned, he was liable to be precipitated out of the cab in case his hands and feet slipped in the manner stated.   This was a danger to be apprehended.

The water from the leaky faucet was an important factor in causing the accident.   Many of the defendant's stem-winder engines

were provided with chains crossing these openings in the cab for the purpose of preventing the employees from falling out of the engine. Engine 98 was not provided with these chains, and that is one of the causes of the plaintiff's complaint.

The absence of these chains, however, was plainly visible to the plaintiff, and he must be held, we think, to have assumed the risk attending the use of the engine without them. But not so with regard to the leaky faucet and the defective grate and shaker bar. These defects he was helpless to remedy. He discovered, for the first time, immediately before the accident, the condition of the faucet, and made an ineffectual attempt to repair it. He knew that the grate was worked with great difficulty, but he was not aware of its liability to be lifted out of its place, thereby allowing the shaker bar to pass over so far. It was a part of his duty, as fireman, to shake the grate from time to time; the movement of the train depended upon his performance of that work; if he neglected it the engine would not have sufficient draft to make the requisite steam. We are of the opinion that the evidence presented questions of fact which should have been submitted to the jury. They should have been allowed to find whether the defendant had not failed to provide the plaintiff with proper machinery and appliances with which to do the work required of him, and whether the accident was not the result of defendant's negligence in that regard.

Whether the plaintiff was guilty of contributory negligence was also a question for the jury. Plaintiff's motion for a new trial should prevail, and a new trial should be granted, with costs to abide the event.

DWIGHT, P. J., HAIGHT and BRADLEY, JJ., concurred.

Plaintiff's motion for a new trial granted, costs to abide the event.